

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00234-CV

_____

AMY HALE, Appellant

V.

BRIAN HALE, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-674169-19

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Amy Hale (Wife) appeals from the trial court's final divorce decree that ended the marriage between Wife and Appellee Brian Hale (Husband). In eight issues, Wife argues that (1) the trial court abused its discretion by striking her pleadings without first imposing lesser sanctions, (2) the trial court abused its discretion by denying her motions for continuance, (3) the trial court abused its discretion by finding that Wife had made a false child abuse report against Husband and by assessing a penalty when insufficient evidence existed to support such a finding, (4) the trial court abused its discretion and denied her due process by not allowing her attorney to ask leading questions of hostile witnesses and by allowing Husband's attorney to ask leading questions of non-hostile witnesses, (5) the trial court abused its discretion by denying her motion to recuse, (6) the trial court abused its discretion by allowing an intervening party to reopen evidence, (7) the trial court abused its discretion by not entering any findings "as to why the possession order deviates from the Standard Possession Order," and (8) the trial court abused its discretion by granting the divorce because the record lacks sufficient evidence regarding Husband's domicile and residency. We will affirm.

## II. BACKGROUND[1]

Husband and Wife were married in August 2013. In February 2017, they had a daughter together, R.H.[2] On December 19, 2019, Husband filed a petition for divorce. Wife answered and filed a counterpetition for divorce. In her counterpetition, Wife alleged that "[t]here is a history or pattern of child abuse committed by [Husband]," and she requested that the trial court deny Husband access to R.H. During approximately seven different investigations from 2019 through 2022, Child Protective Services (CPS) investigated Wife's allegations that Husband had sexually and physically abused R.H. During each of its investigations, CPS "ruled out" the allegations of abuse.

Wife was initially represented by counsel in this case. In November 2021, Wife's counsel and co-counsel filed and were granted motions to withdraw as her respective counsel and co-counsel. Wife's former attorney, Erika Patino, later filed a petition in intervention. In her petition in intervention, Patino alleged that Wife had unpaid attorney's fees.

The case was set for trial on January 23, 2023. A pretrial conference, in which Wife appeared pro se, took place on January 9, 2023. Wife obtained counsel

---

[1]There is little to no overlap between Wife's eight issues. Thus, in an attempt to add some brevity to this lengthy opinion, we will save much of our discussion of the facts for our analysis of Wife's respective issues.

[2]To protect the identity of the child, we use initials to refer to her. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

approximately one week before the trial began. The trial took place over five days beginning on January 23, 2023. Most of the trial was a jury trial, as the jury was asked to appoint the managing conservator of R.H. At the conclusion of the jury portion of the trial, the jury returned a verdict naming Father as the sole managing conservator of R.H. A nonjury portion of the trial then commenced concerning additional issues.

At the conclusion of both portions of the trial, the trial court signed a final divorce decree. In the decree, the trial court found that Wife had made a false report of child abuse against Husband and assessed a $100 civil penalty against Wife. Wife requested, and the trial court issued, findings of fact and conclusions of law. Wife appeals from the final divorce decree.

## III. DISCUSSION

**A. Wife's Complaint That the Trial Court Imposed a Death-Penalty Sanction**

In her first issue, Wife argues that the trial court abused its discretion by striking her pleadings without first imposing lesser sanctions—what Wife contends amounted to a death-penalty sanction. However, Wife does not point us to any order in which the trial court actually struck her pleadings, and we have found none in our review of the record. Rather, Wife's complaint seems to be focused on the trial court's refusal to admit at trial certain exhibits that had not been turned over to

Husband in discovery—namely, videos that were purportedly secretly recorded by Husband showing "the underside of his coworker[']s skirt" (the Upskirt Videos).[3]

### 1. Standard of Review and Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 576 (Tex. App.—Fort Worth 2022, pet. denied). We likewise review a trial court's discovery sanctions—even death-penalty sanctions—for an abuse of discretion. *Martin v. Bayouth*, No. 02-19-00008-CV, 2020 WL 3730773, at *3 (Tex. App.—Fort Worth July 2, 2020, pet. denied) (mem. op.).

Whether the exclusion of evidence constitutes a death-penalty sanction is determined on a case-by-case basis. *In re Namdarkhan*, No. 05-16-01410-CV, 2017 WL 1075640, at *2 (Tex. App.—Dallas Mar. 21, 2017, orig. proceeding) (mem. op.); *Kirschberg v. Comm'n for Law. Discipline*, No. 04-04-00008-CV, 2004 WL 2289618, at *3 (Tex. App.—San Antonio Oct. 13, 2004, pet. denied) (mem. op.). A death-penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the merits of a case. *Namdarkhan*, 2017 WL 1075640, at *2; *Kirschberg*, 2004 WL 2289618, at *3. Where the exclusion of evidence is only an inconvenience that impairs the

---

[3]To the extent that Wife is complaining about the trial court's refusal to admit evidence other than the Upskirt Videos, we hold that said complaint is inadequately briefed because it does not identify the other evidence or explain how the exclusion of said evidence led to an improper judgment. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

presentation of a party's case but does not preclude a trial on the merits, the exclusion of evidence is not a death-penalty sanction. *Namdarkhan*, 2017 WL 1075640, at *2; *Kirschberg*, 2004 WL 2289618, at *3.

Pursuant to Texas Rule of Civil Procedure 193.6, a party who fails to timely make, amend, or supplement a discovery response may not introduce in evidence the material or information that was not timely disclosed unless the trial court finds that (1) good cause exists for the failure to timely make, amend, or supplement the response or (2) the failure will not unfairly surprise or prejudice the other parties. Tex. R. Civ. P. 193.6(a). The burden of establishing good cause or the lack of unfair surprise or prejudice is on the party seeking to introduce the evidence. Tex. R. Civ. P. 193.6(b). "The rule is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of good cause, lack of unfair surprise, or lack of unfair prejudice." *Santana v. Santana*, No. 02-15-00140-CV, 2016 WL 278781, at *1 (Tex. App.—Fort Worth Jan. 21, 2016, no pet.) (mem. op.). The exclusion of evidence under Rule 193.6(a) is a matter of admissibility rather than a sanction.[4] *In re T.K.D-H.*, 439 S.W.3d 473, 479 (Tex. App.—San Antonio 2014, no pet.);

---

[4]In contrast to Rule 193.6(a), Rule 215.2(b) gives a trial court discretion to sanction a party by prohibiting the party from introducing a matter into evidence when the party has failed to comply with discovery requests. *See* Tex. R. Civ. P. 215.2(b); *see also Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at *8 n.45 (Tex. App.—Fort Worth Oct. 27, 2011, pet. denied) (mem. op.) (explaining differences between Rules 193.6 and 215.2).

*In re J.A.M., Jr.*, No. 04-11-00165-CV, 2012 WL 1648215, at *5 (Tex. App.—San Antonio May 9, 2012, pet. denied) (mem. op.).

### 2. Analysis

During trial, Wife's counsel told the trial court, "I don't think any of our exhibits were turned over prior to the end of the discovery period."[5] Wife's counsel asked for leave for the exhibits to be admitted—including the Upskirt Videos—noting that the admission of the exhibits would not unfairly prejudice either side. The trial court stated, "The Court will deny any exhibit not turned over in discovery, and the offering of such exhibits would be prejudicial to this matter, thereby the Court will instruct [Wife] not to offer exhibits that were not turned over in discovery." Given that context, we hold that the trial court's exclusion of the Upskirt Videos was not a death-penalty sanction because it was not a sanction at all; rather, the exclusion was based on the mandatory requirements of Rule 193.6(a).[6] *See T.K.D-H.*, 439 S.W.3d at

---

[5]A prior order in the case established that all discovery was to be completed on or before June 7, 2022.

[6]In her brief, Wife states that the record does not indicate when she was served with any discovery request pertaining to the Upskirt Videos, when said discovery request was due, or whether an extension was granted with respect to her discovery response. Wife, however, did not make those arguments to the trial court when it excluded the Upskirt Videos, and thus, we cannot consider them here. *See Nat'l OilWell Varco, LP v. Sanchez*, No. 08-23-00096-CV, 2024 WL 519201, at *5 (Tex. App.—El Paso Feb. 9, 2024, no pet.) ("[The appellant] argues that it was under no duty to disclose the video because it was not responsive to any discovery request, and [the appellee] failed to cite to any discovery request in his motion to exclude. But this argument was never raised below and cannot be considered here.") (citation

479 (holding that exclusion of evidence under Rule 193.6(a) is a matter of admissibility rather than a sanction for discovery abuse under Rule 215.2); *Carpenter*, 2011 WL 5118802, at *8 n.45 ("Rule 193.6(a)'s exclusion of evidence . . . is mandatory.").

Moreover, even if the trial court's exclusion of the Upskirt Videos could be construed as a sanction, it was not a death-penalty sanction. To that end, the exclusion of the Upskirt Videos did not preclude Wife from presenting the merits of her case; indeed, Wife called seven witnesses during the jury portion of the trial, she called three witnesses during the nonjury portion of the trial, and her attorney cross-examined numerous witnesses during both portions of the trial.[7] *See Namdarkhan*, 2017 WL 1075640, at *2 ("Where the exclusion of [evidence] is only an inconvenience that impairs the presentation of a party's case but does not preclude a trial on the merits, the exclusion of evidence is not a death[-]penalty sanction."); *Kirschberg*, 2004 WL 2289618, at *3 (holding that the appellant was not prevented from presenting the merits of his case where he testified at trial and cross-examined the appellee's witnesses).

---

omitted). Moreover, in her brief, Wife acknowledges, "In the present case, [Wife], or her prior attorneys, did not respond to discovery."

[7]Wife does not explain how the exclusion of the Upskirt Videos precluded her from presenting the merits of her case. *See Kirschberg*, 2004 WL 2289618, at *3 ("On appeal, appellant does not contend he would have offered any of the other excluded witnesses, nor does he explain how the exclusion of any witness prevented him from presenting the merits of his case. We conclude the trial court's sanction was not a death[-]penalty sanction.").

8

Wife points to *Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117 (Tex. App.—Austin Dec. 15, 2016, no pet.) (mem. op.), to support her argument that the trial court's exclusion of the Upskirt Videos constituted a death-penalty sanction. In *Young*, the appellant did not provide complete responses to discovery. *Id.* at *1. The appellee filed a motion to compel discovery and sought sanctions. *Id.* The trial court ordered the appellant to serve the appellee with adequate discovery responses, and it sanctioned the appellant by prohibiting him from calling witnesses or introducing exhibits at trial. *Id.* at *2. On appeal, the Austin Court of Appeals held that the trial court's sanction constituted a death-penalty sanction and that the trial court had abused its discretion by imposing it. *Id.* at *4–6. We find *Young* distinguishable because it considered discovery sanctions under Rule 215.2—sanctions that were levied by the trial court in advance of trial—while, here, the trial court's exclusion of evidence involved the mandatory application of Rule 193.6(a) to exhibits that Wife was attempting to introduce at trial. *See id.* at *3. Moreover, in *Young*, the trial court prohibited the appellant from calling any witnesses or introducing any documents whatsoever; here, however, Wife was allowed to call witnesses and the trial court's ruling excluding her exhibits simply excluded the exhibits that had not been turned over in discovery. *See id.* at *5.

We also note that Wife did not make an offer of proof with respect to the Upskirt Videos; therefore, those videos do not appear in the appellate record. Thus, Wife's complaints relating to the trial court's exclusion of the Upskirt Videos have not

been preserved for appellate review. *See Jimison v. MAEDC-Hulen Bend Senior Cmty., L.P.*, No. 02-23-00206-CV, 2024 WL 3282544, at *7 (Tex. App.—Fort Worth July 3, 2024, no pet. h.) (mem. op.) ("[The appellant] did not make an offer of proof with respect to Defendant's Exhibits 9 and 32–34, and thus, those exhibits do not appear in the appellate record. Thus, [the appellant's] complaints relating to the trial court's exclusion of those exhibits have not been preserved for appellate review." (footnote omitted)); *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494 (Tex. App.—Fort Worth 1999, pet. denied) ("An appellate court cannot decide whether evidence was improperly excluded unless the evidence is included in the record for review.").

We overrule Wife's first issue.

## B. Wife's Motions for Continuance

In her second issue, Wife argues that the trial court abused its discretion by denying her motions for continuance.

### 1. Standard of Review and Applicable Law

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 222 (Tex. App.—Fort Worth 2013, no pet.); *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or

10

unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

A motion for continuance must be in writing and state the specific facts supporting the motion. *Hardwick v. Hardwick*, No. 02-15-00325-CV, 2016 WL 5442772, at *1 (Tex. App.—Fort Worth Sept. 29, 2016, no pet.) (mem. op.); *Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied). A trial court generally does not abuse its discretion by denying an oral motion for continuance. *In re J.P.-L*, 592 S.W.3d 559, 575 (Tex. App.—Fort Worth 2019, pet. denied). Texas Rule of Civil Procedure 251 further requires that a motion for continuance be verified or supported by an affidavit. Tex. R. Civ. P. 251; *see Hardwick*, 2016 WL 5442772, at *1. If a motion for continuance is not verified or supported by an affidavit, we will presume that the trial court did not abuse its discretion by denying the motion. *In re Guardianship of Jones*, No. 02-19-00187-CV, 2022 WL 3458736, at *12 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op.); *In re G.Z.*, No. 02-21-00122-CV, 2021 WL 3796049, at *7 (Tex. App.—Fort Worth Aug. 26, 2021, no pet.) (mem. op.).

## 2. Analysis

On January 19, 2023—four days before trial—Wife filed an unverified motion for continuance.[8] The record does not contain a written order on that motion. On the morning of trial, Wife's counsel orally moved for the trial court to continue the trial. The trial court denied that request. To the extent that the trial court's denial of Wife's oral motion for continuance could be construed as a denial of her written motion for continuance, we hold that the trial court did not abuse its discretion by denying the written motion because it was not verified or supported by an affidavit. *See Jones*, 2022 WL 3458736, at *12 ("Here, [the appellant's] motion for continuance was not verified or supported by affidavit. Accordingly, we presume that the probate court did not abuse its discretion by denying it."); *G.Z.*, 2021 WL 3796049, at *7 ("Thus, because [the appellant's] motion for continuance was not verified or supported by affidavit, we cannot say that the trial court abused its discretion by denying it."). Similarly, the trial court did not abuse its discretion by denying the oral motion for continuance urged by Wife's counsel because it was not in writing, nor was it verified or supported by affidavit. *See Poonjani v. Kamaluddin*, No. 02-14-00193-CV, 2015 WL 3523102, at *2 (Tex. App.—Fort Worth June 4, 2015, no pet.) (mem. op.) ("[W]e have consistently held that a trial court does not abuse its

---

[8]That motion indicated that Wife had recently hired counsel to represent her and that her counsel had a conflict with the trial date. Wife's counsel later appeared at trial.

12

discretion by denying an oral, unsworn motion for continuance."); *Greene v. Greene*, No. 2-03-134-CV, 2004 WL 1415983, at *2 (Tex. App.—Fort Worth June 24, 2004, pet. denied) (mem. op.) (holding that trial court did not abuse its discretion by denying wife's oral motion for continuance when motion was not made in writing and was not verified).

In her brief, Wife also complains that the trial court abused its discretion by not granting an unverified motion for continuance that she had filed on October 13, 2022. In that motion, Wife requested a continuance of an October 17, 2022 hearing on "the Amicus Attorney's Motion for Additional Amicus Attorney Fees." The trial court denied Wife's motion at the October 17, 2022 hearing. Because Wife's October 13, 2022 motion for continuance was not verified or supported by affidavit, the trial court did not abuse its discretion by denying it. *See Jones*, 2022 WL 3458736, at *12; *G.Z.*, 2021 WL 3796049, at *7.

We overrule Wife's second issue.

## C. Wife's Complaint Regarding the Finding of a False Child Abuse Report

In her third issue, Wife argues that the trial court abused its discretion by finding that Wife made a false child abuse report. Wife argues that there was insufficient evidence to support that finding.

13

### 1. Standard of Review and Applicable Law

Texas Family Code Section 153.013 provides that if a party to a pending suit affecting the parent–child relationship makes a report alleging child abuse by another party to the suit that the reporting party knows lacks a factual foundation, the trial court shall deem the report to be a knowingly false report. Tex. Fam. Code Ann. § 153.013(a). If the trial court makes such a finding, the court shall impose a civil penalty not to exceed $500. *Id.* § 153.013(c).

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Id.*

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally

14

sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The factfinder is the sole judge of the candor, demeanor, and credibility of the witnesses and may decline to accept as true the testimony of an interested witness, even if uncontradicted. *Salaymeh v. Plaza Centro, LLC*, 258 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The deference given to the factfinder on issues of credibility and demeanor in family-law matters is particularly great due to the "fact-intensive nature" of family-law matters. *In re Marriage of Featherston*, 675 S.W.3d 330, 334 (Tex. App.—Amarillo 2023, no pet.); *see In re De La Pena*,

15

999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.) ("Appellate courts routinely defer to the fact[]finder at trial concerning matters of credibility and demeanor, but perhaps in no other type of litigation is it more critical [than family-law matters].").

## 2. Analysis

In the final divorce decree, the trial court stated, "The Court finds that credible evidence has been presented that [Wife] has filed a false report of child abuse as defined by Texas Family Code §[]153.013 against [Husband]. [Wife] is assessed a civil penalty in the amount of one hundred dollars ($100.00)." In the trial court's findings of fact and conclusions of law, the trial court found that Wife "has filed a false report of child abuse as defined by Texas Family Code §[]153.013 against [Husband] and is assessed a civil penalty in the amount of $100.00."

In her brief, Wife complains that the trial court's findings of fact and conclusions of law lack specificity because they do not provide "any supporting details or facts." If Wife desired to address that alleged lack of specificity, she could have requested that the trial court make additional or amended findings and conclusions. *See* Tex. R. Civ. P. 298 ("After the court sends original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions."). Because she did not make such a request, Wife has waived any complaint relating to the alleged lack of specificity in the trial court's finding. *See Ahrenhold v. Sanchez,* 229 S.W.3d 541, 543 (Tex. App.—Dallas 2007, no pet.) ("[A]lthough she timely requested findings of fact

16

and gave notice of past due findings, [the appellant] never submitted to the trial court any more specific additional or amended findings. Accordingly, she has waived any complaint with respect to the adequacy of the trial court's findings of fact and conclusions of law."); *Goodfellow v. Goodfellow*, No. 03-01-00633-CV, 2002 WL 31769028, at *7 (Tex. App.—Austin Dec. 12, 2002, no pet.) (not designated for publication) (holding that the appellant "cannot be heard to complain on appeal that the findings and conclusions are incomplete" because he did not make a timely request for additional findings and conclusions).

In an argument spanning two paragraphs, Wife next contends that "the entire record itself is legally and factually insufficient to support a finding that [she] made false child abuse accusations." We disagree. Here, the record reflects the following:

- Husband testified that he had been part of seven different CPS investigations concerning his alleged sexual and physical abuse of R.H.;

- Husband testified that all CPS investigations concerning his alleged sexual and physical abuse of R.H. had been "ruled out";

- Wife acknowledged that all CPS investigations had been "ruled out";

- Wife admitted to calling CPS on Husband;

- A former CPS investigator testified that CPS had investigated the allegations of abuse approximately "five" times and had "ruled out" the allegations;

- The former CPS investigator stated that if she had thought there was a reason to believe that R.H. had been abused, CPS would not have "ruled out" the allegations;

17

- The former investigator stated that the investigations of abuse took place in 2019, 2020, and 2022;

- Husband testified that he had never inappropriately touched R.H. and that he had never touched R.H. in a sexual manner;

- Wife expressed her concern that Husband was abusing R.H. to a counselor that was meeting with Wife, Husband, and R.H.;

- The counselor testified that Wife "expresses a confirmation bias" regarding Husband having sexually and physically abused R.H.;

- The counselor stated that Wife "would talk to [her] about bruises and scratches and things that were normal for kids [R.H.'s] age to experience, but [that] there was this overinterpretation of it" from Wife;

- A psychologist who had interviewed Wife and Husband testified that Wife presented with "some emotional distress symptoms" and that "she had a distinct tendency to try to present herself in an unrealistically positive light"; and

- The psychologist diagnosed Wife "with major depressive disorder."

Viewing the evidence in the light most favorable to the trial court's finding, we hold that a factfinder could have reasonably formed a firm conviction or belief that Wife made a knowingly false report alleging Husband's abuse of R.H., and we therefore hold that the evidence is legally sufficient to support the trial court's finding. *See* Tex. Fam. Code Ann. § 153.013(a). In reaching that conclusion, we are particularly mindful that the factfinder is the sole judge of the candor, demeanor, and credibility of the witnesses, and that the factfinder was in the best position to judge Wife's intent when reporting Husband's alleged abuse of R.H. *See Salaymeh*, 258 S.W.3d at 240; *Featherston*, 675 S.W.3d at 334; *see also Spoljaric v. Percival Tours, Inc.*,

18

708 S.W.2d 432, 434 (Tex. 1986) ("Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony."). Based on our exacting review of the entire record and giving due deference to the factfinder's findings, we likewise conclude that the evidence is factually sufficient to support the trial court's finding. *See Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176.

We overrule Wife's third issue.

## D. Wife's Complaint Regarding Leading Questions

In her fourth issue, Wife argues that the trial court abused its discretion and denied her due process by not allowing her attorney to ask leading questions of hostile witnesses and by allowing Husband's attorney to ask leading questions of non-hostile witnesses. Wife also contends that the cumulative effect of those alleged errors prevented her from putting on a meaningful case.

### 1. Standard of Review and Applicable Law

"A leading question is one which instructs the witness how to answer or puts words into the witness'[s] mouth to be echoed back." *GAB Bus. Servs., Inc. v. Moore*, 829 S.W.2d 345, 351 (Tex. App.—Texarkana 1992, no writ). Leading questions should not be used on direct examination except as is necessary to develop a witness's testimony. Tex. R. Evid. 611(c). A trial court should ordinarily allow leading questions on cross-examination and when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. *Id.* "The purpose of the

19

qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is of a friendly witness, for example, the cross-examination of a party by his own counsel after the party was called by the opponent." *GAB Bus. Servs., Inc.*, 829 S.W.2d at 351.

We utilize an abuse-of-discretion standard to review a trial court's decision to allow trial counsel to ask leading questions. *See Ramin' Corp. v. Willis*, No. 09-14-00168-CV, 2015 WL 6121602, at *16 (Tex. App.—Beaumont Oct. 15, 2015, no pet.) (mem. op.); *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 568 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998). To obtain reversal, an appellant must show that (1) the trial court abused its discretion by allowing trial counsel to ask leading questions, and (2) the abuse of discretion probably caused the rendition of an improper judgment. *See Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 568; *see also* Tex. R. App. P. 44.1(a).

### 2. Analysis

In her brief, Wife identifies only two adverse rulings made by the trial court with respect to an attorney's leading of a witness.[9] Specifically, she points to two objections that her attorney made at trial that were overruled by the trial court. She

---

[9]Wife also references one instance in which Husband's attorney objected on the grounds that Wife's attorney was leading a witness. The trial court overruled that objection, thus ruling in favor of Wife in that specific instance.

contends that her attorney could have made other leading objections at trial—or could have asked additional questions of witnesses—but that he did not do so.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must also get a ruling—either express or implied—from the trial court. Tex. R. App. P. 33.1(a)(2)(A), (b); *see Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002).

Because Wife only raised two objections to the trial court regarding this issue, she has not preserved any complaint apart from those two objections. *See MTNV, Inc. v. ALST Realty, LLC*, No. 14-18-00170-CV, 2019 WL 6317370, at *6 (Tex. App.—Houston [14th Dist.] Nov. 26, 2019, no pet.) (mem. op.) ("[The appellant] failed to object to [the witness's] testimony at trial; thus, [the appellant] failed to preserve error and cannot complain about this testimony for the first time on appeal."); *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 894 (Tex. App.—Texarkana 2005, pet. denied) ("[A] party must object at trial when the testimony is offered in order to preserve error for appellate review.").

We now turn to the two objections raised by Wife at trial pertaining to this issue. First, Wife complains about the following exchange that occurred during Husband's attorney's cross-examination[10] of Husband:

Q. And you actually have heard all the testimony, both from experts, fact witnesses—we heard from the Tarrant County Medical Examiner, right?

[Wife's counsel]: I'm going to object to leading.

[The Court]: Counsel, she's on cross. She can lead.

Q. We actually heard from the Tarrant County Medical Examiner forensic—senior forensic biologist during this case, right?

A. Correct.

Second, Wife complains about the following exchange that occurred when the amicus attorney for R.H. was asking questions on cross-examination of a community supervisor with Tarrant County Family Court Services:

Q. And [Wife] repeats herself to—there are instances where [Wife] repeats herself to [R.H.]?

A. All the time.

Q. And after a series of repetitions, [R.H.] responds accordingly, complying with the statement of—that's being repeated?

A. Sometimes.

---

[10]Wife had called Husband as a witness during her case-in-chief. Following that direct examination, Husband's counsel then had the opportunity to cross-examine Husband.

22

Q. And like when she was—you had talked about that she was fine, feeling-wise—

A. Uh-uh.

Q. —and continued being told, You're not feeling well, you're not feeling well, you're not feeling well—

[Wife's counsel]: Judge, I object to leading a nonhostile witness.

[The Court]: She's on cross, counsel. She leads. Overruled.

Q. Being told this repeatedly, that [R.H.'s] position changed?

A. Yes.

Q. Her demeanor changed, her physical characteristics changed from healthy, happy, running around, to now subdued?

A. Yes.

Assuming without deciding that the trial court abused its discretion by overruling Wife's objections in these two instances, we turn to harm. *See Baker v. Ferrier Builders, Inc.*, No. 02-23-00403-CV, 2024 WL 3896832, at \*5 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (mem. op.) (assuming trial court abused discretion but holding error not harmful). To obtain reversal of a judgment based on an error in the trial court, the appellant must show that the error occurred and that it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court on appeal. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005).

23

As to Wife's first objection, the information elicited from the attorney's question simply reflected that the jury had heard from a senior forensic biologist earlier in the trial. No harm can be shown from that answer because the senior forensic biologist did testify earlier in the trial, a fact that was readily apparent to the jury who had heard the testimony. *See Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 568 ("We need not address whether the trial court abused its discretion in allowing the plaintiffs to ask [the witness] leading questions because [the appellant] cannot demonstrate harm. The testimony elicited from [the witness] is cumulative of other, properly admitted evidence. Thus, any error would be harmless."); *see also Guardianship of N.P.*, No. 02-19-00233-CV, 2020 WL 7252322, at *12 (Tex. App.—Fort Worth Dec. 10, 2020, pet. denied) (mem. op.) ("[I]f the facts recited in a leading question are undisputed, the question is proper.").

As to Wife's second objection, the information elicited from the amicus attorney's question reflected that R.H. would change her answers to questions based on what Wife was telling her. But that same witness gave other testimony indicating that R.H. would often repeat what Wife had told her and that R.H.'s demeanor would change based on what Wife was telling her. Thus, any error in overruling Wife's objection was harmless. *See Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 568; *GAB Bus. Servs., Inc.*, 829 S.W.2d at 351 ("[E]ven if it had been error, it would not have been harmful. The questions inquired whether [the appellant's employee] had access to

24

certain medical records in handling [the appellee's] claim. [The appellee] had already shown . . . that [the appellant] had these records in its files.").

Finally, we reject Wife's argument that the cumulative effect of those alleged errors prevented her from putting on a meaningful case. Even assuming that the trial court erred by overruling Wife's two objections, the alleged errors were harmless. Thus, we cannot say that the aggregate and cumulative effect of the errors probably caused the rendition of an improper judgment. *See Kansas City S. Ry. Co. v. Chaffin*, 658 S.W.2d 186, 191 (Tex. App.—Texarkana 1983, writ ref'd n.r.e.) (overruling appellant's cumulative-error complaint because appellate court "found no error or only harmless error in [the appellant's] eight previous points of error"); *see also Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of pet.) (explaining doctrine of cumulative error and stating that "[a] string of harmless errors does not arithmetically create reversible, cumulative error").

We overrule Wife's fourth issue.

## E. Wife's Motion to Recuse

In her fifth issue, Wife argues that the trial court abused its discretion by denying her motion to recuse.

### 1. Standard of Review and Applicable Law

We review an order denying a motion to recuse for an abuse of discretion. *In re G.S.*, No. 02-19-00390-CV, 2020 WL 1294925, at *2 (Tex. App.—Fort Worth Mar. 19, 2020, pet. denied) (mem. op.). Pursuant to Rule 18a of the Texas Rules of

25

Civil Procedure, a party seeking recusal must file a verified motion stating with particularity why the judge should not hear the case. Tex. R. Civ. P. 18a(a). To be timely, a motion to recuse must be filed "as soon as practicable after the movant knows of the ground stated in the motion." Tex. R. Civ. P. 18a(b)(1)(A). When a party fails to comply with these mandatory requirements, she waives the right to complain of the trial judge's refusal to recuse himself. *Franklin v. City of Fort Worth*, No. 02-12-00453-CV, 2014 WL 3696092, at *4 (Tex. App.—Fort Worth July 24, 2014, no pet.) (mem. op.); *In re Guardianship of Jordan*, 348 S.W.3d 401, 415 (Tex. App.—Beaumont 2011, no pet.).

To carry the burden of proof demonstrating that recusal is warranted, a movant must show that such a degree of bias or prejudice exists that the movant was deprived of a fair trial. *Goesling v. Am. Airlines, Inc.*, No. 02-22-00338-CV, 2023 WL 7037650, at *16 (Tex. App.—Fort Worth Oct. 26, 2023, pet. denied) (mem. op.). The burden on a movant seeking a judge's recusal presents a "high threshold." *Id.* (quoting *In re B.M.B.*, No. 05-22-01322-CV, 2023 WL 3836429, at *5 (Tex. App.—Dallas June 6, 2023, pet. denied) (mem. op.)). Thus, the proof offered to establish a bias or prejudice warranting recusal must rise above mere conclusory statements, conjecture, or assertions of bias. *Id.*

### 2. Analysis

On January 4, 2023, Wife filed an unverified motion to recuse the trial judge and an associate judge. In that motion, Wife complained about the trial judge's and

26

associate judge's respective conduct during certain hearings in 2020, 2021, and 2022. The trial judge and the associate judge referred Wife's motion to the Presiding Judge of the Eighth Administrative Judicial Region, who assigned himself to hear the motion. Following a hearing, the Presiding Judge of the Eighth Administrative Judicial Region—acting as the trial court—denied Wife's motion.

Because Wife's motion to recuse was not verified, she has waived her complaint on appeal regarding the motion. *See Norton v. Phan*, No. 03-22-00002-CV, 2023 WL 4769530, at *7 (Tex. App.—Austin July 27, 2023, no pet.) (mem. op.) ("[The appellant's] motion [to recuse] was not verified. Because [the appellant's] motion did not satisfy the mandatory recusal procedures, his issue regarding the judge's failure to recuse himself is waived."); *Franklin*, 2014 WL 3696092, at *4 ("Even though [the appellant] raised the issue of the trial judge's bias [below], he failed to comply with the mandatory requirements set forth in [R]ule 18a. Therefore, [the appellant] has waived his right to complain on appeal that the judge should have recused herself because she was biased." (citation omitted)); *see also Jackson v. Puckett*, No. 01-22-00369-CV, 2023 WL 1786427, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, pet. denied) (mem. op.) ("Because an unsworn motion to recuse does not comply with the procedural requirements of Rule 18a and is defective on its face, it was not an abuse of discretion to deny the motion.").

Wife argues that we should ignore the requirements of Rule 18a—what she refers to as a "technical rule"—because she was pro se when she filed her motion to

27

recuse. We disagree. Pro se litigants are held to the same standards as licensed attorneys, and we require pro se litigants to comply with applicable laws and rules of procedure. *Anderson v. Hiley Cars Hurst, LP*, No. 02-23-00091-CV, 2024 WL 3195094, at *2 (Tex. App.—Fort Worth June 27, 2024, no pet.) (mem. op.); *Bailey v. Michaelis*, No. 02-22-00024-CV, 2023 WL 2325503, at *1 (Tex. App.—Fort Worth Mar. 2, 2023, no pet.) (mem. op.). To hold otherwise would give pro se litigants an unfair advantage over litigants who are represented by counsel.[11] *Ex parte D.K.*, No. 02-22-00020-CV, 2022 WL 15075939, at *2 (Tex. App.—Fort Worth Oct. 27, 2022, pet. denied) (mem. op.); *In re P.S.*, 505 S.W.3d 106, 111(Tex. App.—Fort Worth 2016, no pet.).

Even if we put aside the problems posed by the fact that Wife did not verify her motion to recuse, we would still hold that the trial court did not abuse its discretion by denying the motion. In her brief, Wife points to two specific hearings to

[11]Wife cites *Wheeler v. Green*, 157 S.W.3d 439 (Tex. 2005) in support of her argument that we should ignore the strictures of Rule 18a because she was pro se when she filed her motion to recuse. We find *Wheeler* distinguishable. *Wheeler* did not involve a motion to recuse; rather, *Wheeler* involved deemed admissions that a pro se plaintiff had failed to timely answer. *Id.* at 442–44. In *Wheeler*, the Texas Supreme Court held that the trial court had abused its discretion by not allowing the pro se litigant to withdraw the deemed admissions after she had demonstrated that her failure was not intentional or the result of conscious indifference and that the other party was not unduly prejudiced. *Id.* at 443. That holding has no application to this motion-to-recuse issue. Indeed, the Texas Supreme Court noted in *Wheeler* that "pro se litigants are not exempt from the rules of procedure" and that having "two sets of rules—a strict set for attorneys and a lenient set for pro se parties—might encourage litigants to discard their valuable right to the advice and assistance of counsel." *Id.* at 444.

support her argument that the trial judge and the associate judge demonstrated bias and prejudice against her—a January 14, 2020 hearing and a November 10, 2021 hearing. However, Wife waited until January 4, 2023, to file her motion to recuse—almost three years after the first complained-of hearing and over a year after the other complained-of hearing. Given that time frame, the trial court did not abuse its discretion by denying Wife's motion because it was not filed "as soon as practicable after the movant knows of the ground stated in the motion." Tex. R. Civ. P. 18a(b)(1)(A); *see K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at *2 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.) (holding that trial judge did not abuse his discretion by denying motion to recuse that was filed "over a year and a half" after complained-of remark was made).

Moreover, the record on appeal does not contain any transcript of the January 14, 2020 or November 10, 2021 hearings. Indeed, Wife's argument on appeal relating to her complaint of alleged bias and prejudice simply recites the allegations contained in her motion to recuse. That alleged proof does not meet the "high threshold" required for proving bias or prejudice; rather, it consists merely of Wife's assertions of bias. *See Goesling*, 2023 WL 7037650, at *16; *B.M.B.*, 2023 WL 3836429, at *5; *Echols v. Gulledge & Sons, LLC*, No. 10-13-00419-CV, 2014 WL 4629056, at *6 (Tex. App.—Waco Sept. 11, 2014, pet. denied) (mem. op.) ("Given that there is no record of a hearing . . . and because the only evidence of bias and impartiality that [the appellants] point to are the accusations contained in their motion to recuse, we cannot

29

say that [the appellants] satisfied their burden of showing bias or impartiality to such an extent as to deprive them of a fair trial.").

We overrule Wife's fifth issue.

## F. Wife's Complaint Regarding the Reopening of Evidence

In her sixth issue, Wife argues that the trial court abused its discretion by "allowing the Intervenor to reopen evidence when necessary predicates were not laid."

### 1. Standard of Review and Applicable Law

Pursuant to Texas Rule of Civil Procedure 270, "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex. R. Civ. P. 270. The decision to reopen the evidence is within the sound discretion of the trial court, and the trial court should liberally exercise its discretion in the interest of justice so that all parties can fully develop their case. *In re E.G.M.*, No. 04-22-00319-CV, 2024 WL 1643343, at *4 (Tex. App.—San Antonio Apr. 17, 2024, no pet.) (mem. op.); *Holden v. Holden*, 456 S.W.3d 642, 648 (Tex. App.—Tyler 2015, no pet.). A trial court's decision to reopen the evidence will not be disturbed on appeal absent a clear abuse of discretion. *Holden*, 456 S.W.3d at 648.

In determining whether to grant a motion to reopen, a trial court may consider a number of factors, including whether: (1) the moving party showed due diligence in

30

obtaining the evidence, (2) the proffered evidence is decisive, (3) reception of such evidence will cause undue delay, and (4) granting the motion will cause an injustice. *Wade v. Wade*, No. 01-13-00912-CV, 2014 WL 3398393, at \*8 (Tex. App.—Houston [1st Dist.] July 10, 2014, no pet.) (mem. op.); *Hernandez v. Lautensack*, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied).

### 2. Analysis

At a January 9, 2023 pretrial conference, Patino, Wife's prior attorney, asked the trial court whether she could present evidence pertaining to her intervention for attorney's fees at "the end of the trial." The trial court agreed with that plan, stating that because Patino's intervention for attorney's fees was "not part of the jury process," she would be able to "present [the] matter after the jury has been excused" and that there was "no need [for her] to be [in the courtroom] for the jury portion." Wife—who appeared pro se at the pretrial conference—did not object to that plan.

On the last day of the nonjury portion of the trial, after all sides had rested and closed, and after a "short recess" was taken, Patino arrived at the courthouse and asked the trial court to reopen the case. Patino indicated that she wanted the case to be reopened so that the trial court could consider her testimony and an invoice reflecting the amount of unpaid attorney's fees owed to her by Wife. Wife's attorney objected to Patino's motion to reopen the evidence. The trial court responded,

> I believe there was an ambiguity as to what time—no specific time was set that we would begin this portion. We did reach out to Ms. Patino and she was alerted to be here, no specific time that we would be done

31

by, and—but she has arrived, even though it's after the closing. I think that's a special circumstance that allows her to present her information. We'll reopen the matter to allow Ms. Patino to testify in that regard.

After the evidence was reopened, Patino presented testimony and evidence regarding her unpaid attorney's fees.

Wife argues that the trial court abused its discretion by reopening the evidence because Patino did not present evidence pertaining to the factors that a trial court may consider in reopening the evidence—whether (1) the moving party showed due diligence in obtaining the evidence, (2) the proffered evidence is decisive, (3) reception of such evidence will cause undue delay, and (4) granting the motion will cause an injustice. *See Wade*, 2014 WL 3398393, at *8; *Hernandez*, 201 S.W.3d at 779. But we have found no authority holding that a trial court abuses its discretion by reopening the evidence when those factors are not satisfied. *See E.G.M.*, 2024 WL 1643343, at *4 ("Given this broad discretion granted to the trial court, this court has noted that it has found 'no authority holding that a trial court abuses its discretion by reopening the evidence [even] in the absence of [the above] factors.'"); *In re R.H.B.*, 660 S.W.3d 136, 156 (Tex. App.—San Antonio 2022, no pet.) ("[The appellant] identifies factors a trial court should consider in deciding whether to reopen the evidence, and he argues [the appellee] did not satisfy those factors. However, he cites no authority holding that a trial court abuses its discretion by reopening the evidence in the absence of those factors." (citation omitted)).

32

And given the circumstances presented here—Wife not objecting at the pretrial conference to the plan for Patino to present evidence pertaining to her attorney's fees at "the end of trial," the trial court reopening the evidence shortly after both sides had rested and closed during the nonjury portion of the trial, and the brief testimony and evidence concerning Patino's attorney's fees[12]—we cannot say that the trial court abused its discretion by reopening the evidence. *See Cox v. Wilkins*, No. 03-05-00110-CV, 2006 WL 821202, at *3 (Tex. App.—Austin Mar. 31, 2006, pet. denied) (mem. op.) (holding that trial court did not abuse its discretion by allowing party to reopen evidence on the sole issue of attorney's fees when it "should not [have] come as a surprise to [the appellant] that [the appellee] was seeking attorney's fees" and when the additional testimony pertaining to the attorney's fees spanned "only six pages of the reporter's record").

We overrule Wife's sixth issue.

## G. Wife's Complaint Regarding the Possession Order

In her seventh issue, Wife argues that the trial court abused its discretion by not entering any findings "as to why the possession order deviates from the Standard Possession Order."

---

[12]Patino's testimony spanned less than five pages of the reporter's record, and her invoice comprised four pages.

33

### 1. Applicable Law

The Texas Family Code provides for a standard possession order in cases involving a suit affecting the parent–child relationship. *See* Tex. Fam. Code Ann. §§ 153.3101–.3171. A rebuttable presumption arises that the standard possession order is in the best interest of the child. *Id.* § 153.252. If the trial court varies from the standard possession order, the court must, on written request by a party, state in writing the specific reasons for the variance from the standard order. *Id.* § 153.258(a). If a trial court fails to state its specific reasons for deviating from the standard possession order, the failure to make such findings does not require reversal if the record affirmatively demonstrates that the appellant suffered no harm. *Graves v. Graves*, 694 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *In re A.V.*, No. 04-15-00011-CV, 2015 WL 6535471, at *5 (Tex. App.—San Antonio Oct. 28, 2015, no pet.) (mem. op.). The test for determining whether an appellant has suffered harm in such an instance is whether the circumstances of the case would require an appellant to guess the reason or reasons that the judge has ruled against it. *Graves*, 694 S.W.3d at *3; *A.V.*, 2015 WL 6535471, at *5.

### 2. Analysis

The final divorce decree had certain provisions relating to the parties' possession and access to R.H. One of those provisions stated:

<u>Supervised Visitation</u>

The Court finds that credible evidence has been presented that [Wife] has filed a false report of child abuse as defined by Texas Family Code §[]153.013 against [Husband]. [Wife] is assessed a civil penalty in the amount of one hundred dollars ($100.00). IT IS THEREFORE ORDERED that [Wife] shall pay said penalty to [Husband] by and through his attorney of record no later than 5:00 P.M. on March 1, 2023[,] by cash, check, or money order.

IT IS THEREFORE ORDERED that [Wife's] access shall be continuously supervised at all times under the supervision of Tarrant County Community Supervision. IT IS FURTHER ORDERED that [Husband], or his designee, shall make the child available at the time and location agreed upon with the designated supervisor.

IT IS FURTHER ORDERED that [Wife] is enjoined from having any other person(s) (to include family members) from attending her periods of supervised visits. [Wife] is further prohibited from questioning the child about any allegation of abuse addressed as a basis for this order. Any Allegation of future abuse reported by [Wife] must be addressed to the supervisor as soon as an outcry is made. [Wife] is further enjoined from discussing prior allegations of abuse concerning the child with educators or professionals associated with this case. IT IS FURTHER ORDERED that all cost of supervision shall be covered by [Wife]. IT IS THEREFORE ORDERED that [Wife's] supervised access shall occur on the following days and times . . . .

After the trial court signed the final divorce decree, Wife requested that the trial court make findings of fact and conclusions of law. Among other things, Wife requested that the trial court state its findings in support of its child-possession determination and that it give the specific reasons for the variance from the standard possession order. The trial court later made findings of fact and conclusions of law. In its findings and conclusions, the trial court stated that "[l]imiting and restricting [Wife's] possession of or access to the child is in the best interest of the child." The

35

trial court further stated that Wife "has filed a false report of child abuse as defined by Texas Family Code §[]153.013 against [Husband] and is assessed a civil penalty in the amount of $100.00." The trial court also found that Wife "is entitled to periods of possession with [R.H.] under the terms and conditions set forth in the order" and that "[d]eviation from the standard possession order is in the best interest of the child."

On appeal, Wife acknowledges that the trial court made findings of fact and conclusions of law in response to her request but complains that the court's findings and conclusions lacked the specificity required by Section 153.258. *See* Tex. Fam. Code Ann. § 153.258. However, Wife failed to address that alleged lack of specificity with the trial court through a request for additional or amended findings of fact and conclusions of law. *See* Tex. R. Civ. P. 298 ("After the court sends original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions."). Wife has thus forfeited any complaint regarding the alleged lack of specificity of the trial court's findings. *See Ahrenhold*, 229 S.W.3d at 543 (holding that the appellant waived complaint regarding inadequacy of findings of fact and conclusions of law by failing to request additional or amended findings and conclusions); *Goodfellow*, 2002 WL 31769028, at *7 (similar).

Even if Wife had not waived this complaint, we would still reject it because Wife has not suffered any harm due to the lack of specificity. In this regard, Wife does not have to guess the reasons why the trial court deviated from the standard possession order. In the decree, following a heading labeled "Supervised Visitation,"

36

the trial court stated that Wife had filed a false report of child abuse as defined by Section 153.013 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 153.013. Immediately following the paragraph mentioning the false report, the trial court stated, "IT IS THEREFORE ORDERED that [Wife's] access shall be continuously supervised at all times under the supervision of Tarrant County Community Supervision." The trial court then listed the days and times that Wife was allowed supervised access to R.H., mentioning that Wife was "prohibited from questioning [R.H.] about any allegation of abuse" during the visits. In its findings of fact and conclusions of law, the trial court stated that Wife had filed a false report of child abuse, that "[l]imiting and restricting [Wife's] possession of or access to the child is in the best interest of the child," and that "[d]eviation from the standard possession order is in the best interest of the child."

Given those statements from the trial court, we hold that Wife has not suffered any harm from any purported lack of compliance with Family Code Section 153.258 because she was not required to guess the reasons for the variation—the variation occurred because the trial court found that she had filed a false report of child abuse and it thought that the variation was in R.H.'s best interest. *See Graves*, 694 S.W.3d at *3 (concluding that the appellant suffered no harm from the absence of a finding as to why the possession order deviated from the standard possession order where the appellant did not have to guess the trial court's reasoning for the deviation); *Filla v. Filla*, No. 03-14-00502-CV, 2016 WL 4177236, at *3 (Tex. App.—Austin

37

Aug. 5, 2016, pet. denied) (mem. op.) ("[The appellant] did not have to guess the reasons why the trial court deviated from a standard possession schedule because the trial court's reasons are evident from the record."); *A.V.*, 2015 WL 6535471, at *7 ("Because the trial court stated its reasons for varying from the standard order on the record, [the appellant] was not required to guess the reasons for the variations. Accordingly, [the appellant] was not harmed by the trial court's not stating the reasons in its order, and her . . . issue is overruled.").

We overrule Wife's seventh issue.

## H. The Evidence Regarding Husband's Domicile and Residency

In her eighth issue, Wife argues that the trial court abused its discretion by granting the divorce because the record lacks sufficient evidence regarding Husband's domicile and residency.

### 1. Standard of Review and Applicable Law

Section 6.301 of the Texas Family Code provides that no suit for divorce shall be maintained unless, at the time the suit was filed, either the petitioner or respondent has been a domiciliary of Texas for the preceding six-month period and a resident of the county where the suit was filed for the preceding ninety-day period. Tex. Fam. Code Ann. § 6.301. Although the domicile and residency requirements are not jurisdictional, they are mandatory requirements for those seeking to maintain an action for divorce. *In re Marriage of Svalesen*, No. 05-13-01151-CV, 2015 WL 4456096, at *2 (Tex. App.—Dallas July 21, 2015, no pet.) (mem. op.); *Reynolds v. Reynolds*,

86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.). Questions of domicile and residency as qualifications for a divorce action are fact issues to be determined by the trial court, and they will not be disturbed on appeal unless there is a clear abuse of discretion. *Svalesen*, 2015 WL 4456096, at *2; *Barnard v. Barnard*, 133 S.W.3d 782, 785 (Tex. App.—Fort Worth 2004, pet. denied).

### 2. Analysis

In the trial court's findings of fact and conclusions of law, the trial court found that Husband "had been a domiciliary of Texas for six months and a resident of Tarrant County for ninety days." Wife argues that the trial court abused its discretion in making that finding because the evidence is insufficient to support it. We disagree.

As a preliminary matter, we note that in Wife's counterpetition for divorce, she affirmatively stated that she "has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period." That statement concerning Wife's domicile and residency satisfies the requirements of Section 6.301 and is considered a judicial admission that obviates the need for any evidence on the issue pertaining to Husband's domicile and residency. *See In re I.J.*, No. 05-23-00309-CV, 2024 WL 1671938, at *1 (Tex. App.—Dallas Apr. 18, 2024, no pet.) (mem. op.) ("But Mother's counter-petition judicially admitted . . . that the parties met the residency and domicile requirements. Thus, Mother cannot challenge the divorce decree on that basis."); *Barnard*, 133 S.W.3d at 785 (holding that husband's "counterpetition for divorce stating that he was a resident of Denton County and a

domiciliary of Texas for the required period of time" constituted a judicial admission and that "no additional proof [was] required of the admitted fact"); *see also Svalesen*, 2015 WL 4456096, at *2 ("A statement in the petition for divorce that the petitioner satisfies the residency and domicile requirements is considered a judicial admission in the divorce and obviates the need for any evidence on that issue.").

Even if we looked beyond Wife's own admissions concerning her domicile and residency, the evidence adduced at trial is sufficient to support the trial court's finding regarding Husband's domicile and residency. In this regard, the following exchanges occurred at trial between Husband and his attorney:

Q. Where do you currently reside?

A. Live in Crowley, Texas. Do you want the full address?

Q. Sure.

A. 521 Riverbed, Crowley, Texas, 7602—76036.[13]

Q. Is that the residence where you and [Wife] resided together?

A. Yes.

Q. When did you purchase that home?

---

[13]We take judicial notice that 521 Riverbed Drive, Crowley, Texas 76036, is an address in Tarrant County, Texas. *See Barber v. Intercoast Jobbers & Brokers*, 417 S.W.2d 154, 157–58 (Tex. 1967) (holding that a court may take judicial notice that a specific intersection is located in a particular county); *Kishor v. TXU Energy Retail Co., LLC*, No. 05-10-01496-CV, 2011 WL 5857215, at *3 (Tex. App.—Dallas Nov. 17, 2011, no pet.) (mem. op.) ("We may take judicial notice that this address is within Dallas County.").

A. In late 2016, I think.

. . . .

Q. So you indicated—I think you testified that you have resided at 521 Riverbed for almost six years?

A. Uh-huh. Correct.

Q. Who currently resides there?

A. Myself and [R.H.]

. . . .

Q. Okay. So you're presently married to [Wife]. When did you get married?

A. August 13—18th, 2013.

Q. Prior to the separation, did you live in the marital residence together on Riverbed?

A. Yes.

. . . .

Q. Did you live in this county for the 90 days prior to filing this case?

A. Yes.

. . . .

Q. Have you been a resident of the State of Texas for at least six months?

A. Yes.

Q. Prior to filing, too?

A. Yes.

The above testimony—establishing that Husband had lived in Tarrant County for the ninety days prior to filing suit, had been a resident of Texas for at least six months prior to filing suit, had resided with Wife in Tarrant County in a home purchased in 2016, had been living in that home for "almost six years," and was still living in that home—is evidence that supports the trial court's finding regarding Husband's domicile and residency. *See Barry v. Barry*, 193 S.W.3d 72, 75 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("At trial, [the appellee] testified that [the appellant] had lived in Texas at least six months and in Harris [C]ounty at least 90 days. This is some evidence that Rule 6.301 has been satisfied."). Because evidence exists to support the trial court's finding, we hold that the trial court did not abuse its discretion in making the finding. *See Svalesen*, 2015 WL 4456096, at *2; *Barnard*, 133 S.W.3d at 785; *see also Barry*, 193 S.W.3d at 75 (holding that because there was "some evidence that Rule 6.301 ha[d] been satisfied," there was "legally and factually sufficient [evidence] to meet the statutory requirements").

We overrule Wife's eighth issue.

## IV. CONCLUSION

Having overruled Wife's eight issues, we affirm the trial court's final divorce decree.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  October 17, 2024